IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-50071
_____

UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

        v.

DAVID EUGENE KESSLER,
WILLIAM PEARSON KESSLER, AND
GEORGE ROBERT HURLBURT,

                              Defendants-Appellants.
_____

            Appeal from the United States District Court
                 for the Western District of Texas
                        (EP-97-CR-602-DB)
_____
                        December 2, 1998
Before KING, GARWOOD, and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:[*]

        David Kessler, William Kessler, and George Hurlburt, the

defendants-appellants, challenge their individual convictions and

sentences relating to a conspiracy to distribute marijuana.  We

affirm.

            I.  FACTUAL AND PROCEDURAL BACKGROUND

_____

        [*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

On the evening of July 3, 1997, a confidential informant tipped the United States Customs Service that a faded blue van containing narcotics would be traveling at about 8:00 p.m. on Interstate Highway 10 toward the area of North Loop and Horizon Road in El Paso, Texas. The Customs Service positioned special agents on Interstate 10 to conduct surveillance of the area, and at about 8:05 p.m. Special Agent Jorge Balderrama (Balderrama) spotted and began to follow a van meeting the informant's description east on Interstate 10. After losing sight of the van and apparently following a different van, Balderrama regained contact with the original blue van as it exited a ranch. Balderrama turned to follow the van, and the van pulled over to the side of the road; Balderrama turned around again, and he saw the van traveling toward him. Balderrama turned around a third time to follow the van, and this time the van increased speed. Balderrama noticed that the side door to the van was open. He also confirmed that the van was the original van he had spotted by comparing its license plate number to partial plate information he had obtained while following it earlier.

Balderrama stopped and searched the van, finding no narcotics. The driver, Leonardo Valencia, told Balderrama that the van's side door was open because it was broken, but upon inspection, Balderrama determined that the door would close and was not broken. Balderrama asked Valencia where he was coming from, and Valencia responded "from here," "from my ranch, here,"

2

and "my little ranch here." When asked for the address of the ranch, Valencia responded "right here. Just right here." Balderama asked Valencia to cooperate and take him to the ranch from which he came. Valencia responded, "Well, you know where I came from. You saw me leaving there." Upon hearing Balderrama tell other agents that they did not need Valencia's help in finding the ranch, Valencia agreed to take the officers to the ranch. During the trip to the ranch, Valencia remarked, "It's about the marijuana that was in the van."

The ranch was enclosed by pipe fencing, and when the agents arrived the gate to the property was open. The agents noticed a sign next to the open gate that read "Car Parking," with an arrow pointing onto the ranch property. Valencia identified a barn inside the gate as containing marijuana. The agents drove through the open gate and entered a driveway, following the sign's directions toward parking.

When additional officers arrived, they approached the barn that Valencia had indicated contained marijuana. Officer Frank Hernandez stated that he smelled marijuana and heard voices as he approached the barn. Hernandez subsequently looked through an open door to the barn and saw boxes and an individual walking next to a van. An officer asked the occupants of the building to step outside, and all three appellants exited the barn and were arrested. Incident to the appellants' arrests, the agents conducted security sweeps of the barn and the house. During the

3

security sweep of the barn, the agents saw bales of marijuana, loose marijuana, a van filled with marijuana, scales, and three pairs of gloves.

After conducting the security sweep, two agents left the ranch to obtain a search warrant for the barn, the residence, and the vehicles. The affidavit in support of the warrant did not reference any observations made during the security sweep. The agents returned to the ranch with a warrant three hours later and searched the barn, yielding what they had found before, as well as packing materials, an odor gun, cat litter, and a document that appeared to be a drug ledger. The officers also found $36,000 in cash in the house. In all, the agents found about 4000 pounds of marijuana, including 1800 pounds found in a van parked inside the barn.

George Hurlburt (Hurlburt) allowed an FBI special agent to search his trailer. Upon entering the trailer, the agent saw a revolver on the night stand and crack cocaine and marijuana on a bureau in the bedroom. After Hurlburt was advised of, and waived, his constitutional rights, he disclaimed ownership of the marijuana in the barn.

After William Kessler was advised of his constitutional rights, he admitted that there was marijuana in the barn, but claimed that he had only entered the barn twenty minutes earlier to talk to Hurlburt and David Kessler, his brother. After initially denying knowledge concerning who owned the ranch,

4

William Kessler admitted to working as the ranch foreman for the actual property owners.[1]

The appellants, along with two other codefendants, were charged with possession with intent to distribute marijuana, see 21 U.S.C. § 841(a)(1), and conspiracy with intent to distribute marijuana, see 21 U.S.C. § 846. Appellants sought an order from the trial court requiring the government to disclose the identity of the confidential informant, which was denied. The appellants also filed motions to suppress the evidence found in the barn, which were denied after a hearing. Finally, the appellants sought and were denied permission to depose a foreign witness.

Following a jury trial, William Kessler was convicted of both counts. David Kessler and Hurlburt were convicted of the conspiracy count and acquitted of the possession charge. David Kessler and William Kessler were sentenced to 130 months of imprisonment followed by five years of supervised release and were ordered to pay a $2000 fine. Hurlburt received the same penalty with five additional months of imprisonment.

Appellants then filed a motion for a new trial based on newly discovered evidence. The evidence referred to in the motion (collectively referred to as the Oklahoma City evidence) consisted of government documents concerning investigations of narcotics trafficking from El Paso to Oklahoma City, which the

---

[1] The actual property owners, Marshall Scott Farris and Julie Farris, were not charged with any crimes.

appellants maintain identify several individuals as supplying, distributing, and originally packaging the drugs found in the barn. Included in the Oklahoma City evidence were records relating to a criminal case in Oklahoma City, in which the appellants claim that the government admitted that other individuals owned and distributed the drugs found in the barn the night of the appellants' arrests. The district court denied the new trial motion, noting that the appellants' indictments specifically indicated that the conspiracy included "others unknown to the Grand Jury." In addition, the court found that the Oklahoma City criminal trial was irrelevant to the issues in the appellants' trial. Following the district court's denial of their new trial motion, the appellants timely appealed.

## II. DISCUSSION

The appellants make several arguments in support of their appeals. The appellants first contend that the trial court erred in denying their motion to suppress evidence, and that the admissible evidence was insufficient as a matter of law to support their convictions. Next, the appellants argue that the trial court erred in refusing to force the government to reveal the identity of the informant and in denying their motion to depose a foreign witness. The appellants also argue that the district court erred in denying their new trial motion based on newly discovered evidence, and that the government's failure to disclose this evidence violated Brady v. Maryland, 373 U.S. 83

(1963).  Lastly, the appellants maintain that the trial court erred in its sentencing calculations.  We consider each issue in turn.

### A.  The Suppression Motion

The appellants challenge the agents' entry onto the ranch, the security sweep, their arrests, and the search conducted after the agents obtained a warrant on Fourth Amendment grounds.  In reviewing a district court's ruling on a motion to suppress, we review questions of law de novo.  See United States v. Baker, 47 F.3d 691, 692-93 (5th Cir. 1995); United States v. Alvarez, 6 F.3d 287, 289 (5th Cir. 1993).  We consider the evidence in the light most favorable to the prevailing party and accept the district court's factual findings unless clearly erroneous or influenced by an incorrect view of the law.  See Baker, 47 F.3d at 693; Alvarez, 6 F.3d at 289.

The entry by the agents onto the ranch property and their subsequent drive to the barn did not violate the appellants' Fourth Amendment rights.  It is true that warrantless searches violate the Fourth Amendment unless they fall within a specific exception to the general rule.  See United States v. Karo, 468 U.S. 705, 717 (1984); United States v. Gonzales, 121 F.3d 928, 938 (5th Cir. 1997), cert. denied, 118 S. Ct. 726 (1998), and cert. denied, 118 S. Ct. 1084 (1998).  However, consent to search is one such exception to the warrant requirement.  See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); United

States v. Jenkins, 46 F.3d 447, 451 (5th Cir. 1995). Here, the agents relied on Valencia, a third party, to consent to the search. When the government seeks to justify a consent search on the theory that consent was lawfully obtained from a third party, the government must prove by a preponderance of the evidence that the third party had either actual or apparent authority to consent. See Gonzales, 121 F.3d at 938; United States v. Jaras, 86 F.3d 383, 388-89 (5th Cir. 1996). To establish that a third party had apparent authority to consent, the government need only show that the agents "reasonably believed that the third party was authorized to consent." Gonzales, 121 F.3d at 938 (citing Illinois v. Rodriguez, 497 U.S. 177, 188 (1990)); see Jaras, 86 F.3d at 389.

The district court found that the agents reasonably believed Valencia had the authority to consent to the agents' entering the ranch. The court credited Balderrama's testimony that Valencia told him he left marijuana at "his ranch," that he had seen Valencia exit the ranch in the van, that Valencia had identified the barn as the place where he had left marijuana, and that Valencia had consented to their entry onto the property. The district court also explicitly found Valencia's testimony that he had not consented incredible. The district court's findings of fact are not clearly erroneous, and they suffice to prove that the agents reasonably believed Valencia had authority to consent to their entry onto the property and their drive toward the barn.

8

See Rodriquez, 497 U.S. at 188-89; Gonzales, 121 F.3d at 939; Iron Wing v. United States, 34 F.3d 662, 665 (8th Cir. 1994).

In addition, the driveway leading to the barn was not entitled to Fourth Amendment protection. The Fourth Amendment protects homes and the areas immediately surrounding homes, known as the curtilage of the dwelling. See United States v. Dunn, 480 U.S. 294, 300 (1987). The primary issue in determining whether an area is part of the curtilage is whether the area "is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." Id. at 301.

Areas that are accessible to the public, such as the driveway leading to the barn, are afforded less protection than residences. See, e.g., United States v. Thomas, 120 F.3d 564, 571-72 (5th Cir. 1997), cert. denied sub nom. Harmon v. United States, 118 S. Ct. 721 (1998) and cert. denied, 118 S. Ct. 721 (1998) (finding that principal means of access to an apartment was not protected by Fourth Amendment); Krause v. Penny, 837 F.2d 595, 597 (2d Cir. 1988) (stating that there is substantial "authority for the proposition that areas such as driveways that are readily accessible to visitors are not entitled to the same degree of Fourth Amendment protection as are the interiors of defendants' houses").

In Dunn, the Supreme Court articulated a four-factor test as an analytical tool in assessing whether an area is part of the

9

curtilage. See 480 U.S. at 301-03. The four factors are: (1) the area's proximity to the home, (2) whether the area is included within an enclosure, (3) the uses to which the area is put, and (4) the steps taken to protect the area from observation. See id.

The district court's factual findings, which the appellants do not contest, strongly support a conclusion that, under Dunn, the driveway at issue here is not part of the curtilage. First, the district court found that the parking area where the agents parked was twenty yards away from the home. From this finding, we can infer that the driveway and the barn "should be treated as an adjunct" of the house, and should not be granted the same protection as the house itself. Dunn, 480 U.S. at 302; see United States v. Traynor, 990 F.2d 1153, 1158 (9th Cir. 1993) (finding that a structure about twenty five yards from a home was not protected) (citing United States v. Pace, 955 F.2d 270, 273 (5th Cir. 1992)); United States v. Calabrese, 825 F.2d 1342, 1350 (9th Cir. 1987) (finding that a structure located fifty feet from a residence was not protected under the Fourth Amendment).

While the district court found that the driveway area was surrounded by a fence, we agree with its analysis that the second Dunn factor weighs only slightly in favor of the appellants, as the fence encloses a rural area much larger than the house itself. As such, the fence does not "demark a specific area of land immediately adjacent to the house that is readily

10

identifiable as part and parcel of the house." Id. Instead, the outer fence surrounding the ranch ostensibly indicates the limit of land ownership, and does not clearly mark an area "around the home to which the activity of home life extends." Id. (internal quotation marks omitted); see United States v. Soliz, 129 F.3d 499, 502 (9th Cir. 1997) (finding that not all of the area within a chain link fence surrounding the entire property was entitled to protection); United States v. Van Damme, 48 F.3d 461, 464 (9th Cir. 1995) (finding that perimeter fence did not define area afforded Fourth Amendment protection).

The district court's factual findings regarding the third and fourth Dunn standards strongly indicate that the driveway should not be considered curtilage. The court found that the driveway is used by ranch residents, visitors, and others for access to the house and barn and for parking; that the gates to the driveway were open; that the owner had not taken any steps to indicate that permission was necessary to gain entrance to the driveway; that there was no bell or buzzer with which the agents could have announced their arrival; that the "Car Parking" sign indicated that parking was readily available further down the driveway; and that the pipe fence provided no visual privacy. These factual findings, all amply supported by the record, indicate that the driveway was put toward public use and that there were no steps taken to protect the area from observation. See Thomas, 120 F.3d at 571 (finding that an open gate and other

11

signs that no precautions had been taken to ensure privacy provided strong evidence that an area was not curtilage).

Based on the application of the Dunn factors to its factual findings, the district court properly concluded that the driveway was not so intimately tied to the home that it should protected by the Fourth Amendment.  The agents therefore did not violate the appellants' Fourth Amendment rights in entering the ranch property and driving on the driveway toward the barn. See Thomas, 120 F.3d at 571-72; Pace, 955 F.2d at 275.

The appellants next argue that the agents' security sweep of the barn and the home violated their Fourth Amendment rights. However, the district court found, and our review of the record confirms, that the search warrant eventually obtained by the agents to search the property did not contain any statements regarding evidence found during the protective sweep.  Because, as we explain below, the agents' reliance on the search warrant was not unreasonable, the district court did not err in refusing to suppress evidence on this ground.  See United States v. Hutchings, 127 F.3d 1255, 1259 (10th Cir. 1997) (finding no Fourth Amendment violation based on alleged protective sweep because officers relied on observations made before sweep in warrant request); United States v. Warren, 16 F.3d 247, 253 (8th Cir. 1994) ("The motion to suppress was properly denied because the search warrant was not based on any evidence discerned from the entry and protective sweep.") (citing Segura v. United

States, 468 U.S. 796, 805 (1984)).  We therefore need not address the question of whether the search of the barn and house conducted before the agents obtained the search warrant was valid as a protective sweep under Maryland v. Buie, 494 U.S. 325, 334-35 (1990).

The appellants next attack the validity of the search warrant eventually obtained to search the property.  We employ a two-step process for reviewing a district court's conclusion concerning the sufficiency of a warrant.  See United States v. Richardson, 943 F.2d 547, 549 (5th Cir. 1991).  First, we determine whether the good-faith exception to the exclusionary rule applies.  See United States v. Leon, 468 U.S. 897, 922-23 (1984); United States v. Satterwhite, 980 F.2d 317, 320 (5th Cir. 1992).  Only if a novel legal question is presented or the good-faith exception does not apply must we then "ensure that the magistrate had a substantial basis for . . . conclud[ing] that probable cause existed."  Illinois v. Gates, 462 U.S. 213, 238-39 (1983) (ellipses and brackets in original) (internal quotation marks omitted).  If the good-faith exception applies, the court need not reach the question of probable cause.  See Satterwhite, 980 F.2d at 320; United States v. Craig, 861 F.2d 818, 820 (5th Cir. 1988) ("Principles of judicial restraint and precedent dictate that, in most cases, we should not reach the probable cause issue if a decision on the admissibility of the evidence

13

under the good-faith exception of <u>Leon</u> will resolve the matter.").

In <u>Leon</u>, the Supreme Court established the good-faith exception, holding that "evidence obtained by law enforcement officials acting in objectively reasonable good-faith reliance upon a search warrant is admissible in the prosecution's case-in-chief, even though the affidavit on which the warrant was based was insufficient to establish probable cause." <u>Craig</u>, 861 F.2d at 821 (citing <u>Leon</u>, 468 U.S. at 922-23). "Issuance of a warrant by a magistrate normally suffices to establish good faith on the part of law enforcement officers who conduct a search pursuant to the warrant." <u>Id.</u> However, an officer cannot establish good faith reliance when a warrant is "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." <u>Leon</u>, 468 U.S. at 923 (internal quotation marks omitted).

The affidavit in support of the search warrant in this case provided sufficient "indicia of probable cause" for reasonable law enforcement officers to believe that the procured warrant was valid. The affidavit recounted the circumstances concerning the initial stop of Valencia, including his exit from the ranch, his apparent counter-surveillance driving, and his statement that the stop of his van concerned marijuana. The affidavit also related that Valencia had taken the agents to the ranch and pointed out a large building as containing marijuana. In addition, it stated

14

that after the agents had entered the property, they had seen large bales of what they thought was marijuana inside the barn, and that there was a strong odor of marijuana.  Under these circumstances, we believe that a reasonable officer could easily have concluded that the affidavit contained probable cause sufficient to justify issuance of the search warrant.  Thus, the good-faith exception applies, and the district court did not err in denying the appellants' motion to suppress on this basis.

Lastly, the district court did not err in concluding that the warrantless arrests of the appellants were valid.  The Fourth Amendment requires that a warrantless arrest be based upon probable cause.  See United States v. Shugart, 117 F.3d 838, 846 (5th Cir. 1997), cert. denied, 118 S. Ct. 433 (1997); United States v. Levine, 80 F.3d 129, 132 (5th Cir. 1996).  Probable cause exists when "the totality of facts and circumstances within an officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed an offense."  United States v. Hebert, 131 F.3d 514, 524 (5th Cir. 1997), cert. denied, 118 S. Ct. 1571 (1998) (citing United States v. Wadley, 59 F.3d 510, 512 (5th Cir. 1995)); see Shugart, 117 F.3d at 846.

The agents who arrested the appellants had sufficient knowledge to conclude that Hurlburt and the Kesslers had committed an offense.  The district court found at the suppression hearing that Valencia told the agents there was

15

marijuana inside the barn.  The agents smelled a strong odor of, and saw bales of, marijuana through a barn door.  The agents heard the appellants' voices inside the barn and saw them exit the barn together.  One of the appellants confirmed to the agents Valencia's statement that there was marijuana inside the barn. One appellant, Hurlburt, had marijuana on his hands and clothing. Based on these district court findings, all supported by the record, the agents had probable cause to believe that the appellants had committed an offense.  Their warrantless arrests, therefore, did not violate the appellants' Fourth Amendment rights.

### B.  The Sufficiency of the Evidence

The appellants next contend that the evidence presented at trial was insufficient as a matter of law to support their convictions for conspiracy to possess with intent to distribute marijuana and/or possession with intent to distribute marijuana. In reviewing a challenge based on factual sufficiency, this court must determine whether a rational trier of fact could have found that the evidence established guilt beyond a reasonable doubt. See United States v. Hemmingson, 157 F.3d 347, 353 (5th Cir. 1998); United States v. Dupre, 117 F.3d 810, 818 (5th Cir. 1997), cert. denied, 118 S. Ct. 857 (1998).  The court must view the evidence in the light most favorable to the government and accept all reasonable inferences in the government's favor.  See Hemmingson, 157 F.3d at 353; United States v. Ivey, 949 F.2d 759,

16

766 (5th Cir. 1991). Inconsistency in a jury's verdict is not ground for appeal. See Harris v. Rivera, 454 U.S. 339, 345 (1981); United States v. Price, 750 F.2d 363, 365 (5th Cir. 1985).

Only William Kessler was convicted of the § 841(a)(1) possession with intent to distribute charge. To prove a violation of § 841(a)(1), the government must show (1) knowing (2) possession (3) with intent to distribute. See United States v. Ramirez, 954 F.2d 1035, 1039 (5th Cir. 1992); United States v. Anchondo-Sandoval, 910 F.2d 1234, 1236 (5th Cir. 1990). Possession of a controlled substance may be actual or constructive, may be joint among several defendants, and may be proved by direct or circumstantial evidence. See United States v. Pigrum, 922 F.2d 249, 255 (5th Cir. 1991); United States v. Gardea Carrasco, 830 F.2d 41, 45 (5th Cir. 1987). Constructive possession is "the knowing exercise of, or the knowing power or right to exercise, dominion and control over the proscribed substance." Gardea Carrasco, 830 F.2d at 45 (internal quotation marks omitted); see Pigrum, 922 F.2d at 255. The intent to distribute can be inferred from the amount of marijuana alone. See United States v. Casilla, 20 F.3d 600, 603 (5th Cir. 1994); United States v. Martinez-Mercado, 888 F.2d 1484, 1491 (5th Cir. 1989). The jury could reasonably have determined that William Kessler had knowing possession of marijuana based on the evidence presented at trial. The agents saw him exit from the barn, which

17

contained about 4000 pounds of marijuana in plain view.  He also explicitly told the agents that there was marijuana inside the barn.  Likewise, the jury could have inferred his intent to distribute the marijuana from the enormous quantity of the drug found on the scene.  See Martinez-Mercado, 888 F.2d at 1491 (stating that a jury could have inferred intent to distribute from evidence that the defendant possessed three hundred pounds of marijuana).  The scene at the barn also evidenced an intent to distribute.  It appeared that the marijuana was being placed in large boxes surrounded by cat litter to mask the odor.  The agents found tape and empty boxes in the barn, from which the jury could have reasonably inferred that William Kessler was packaging the drugs.  The agents also found what appeared to be a drug ledger in the barn, which supports a finding of commercial drug distribution.  In short, the circumstantial evidence in this case is considerably more than sufficient to support William Kessler's possession with intent to distribute conviction.

All three appellants argue that the evidence was insufficient to support their convictions for conspiring with intent to distribute marijuana, in violation of 21 U.S.C. § 846. In order to establish a conspiracy under § 846, the government must prove beyond a reasonable doubt that a conspiracy existed and that the defendant knowingly and voluntarily became a part of the conspiracy.  See United States v. Featherson, 949 F.2d 770, 774 (5th Cir. 1991).  These elements need not be shown by direct

18

evidence; an inference from circumstantial evidence suffices.
See United States v. Espinoza-Seanez, 862 F.2d 526, 536-37 (5th
Cir. 1988).  The conspiratorial agreement can be inferred from
concert of action.  See id. at 537.

The crux of the appellants' argument is that they were
"merely present" in the barn and that there is no evidence
specifically linking them to a conspiracy with intent to
distribute the marijuana found inside the barn.  Although it is
true that "mere presence" alone will not support an inference of
participation in a conspiracy, see id. at 537, presence combined
with other circumstantial evidence is sufficient, see United
States v. Westbrook, 119 F.3d 1176, 1189 (5th Cir. 1997), cert.
denied sub nom. Peoples v. United States, 118 S. Ct. 1059 (1998),
and cert. denied sub nom. Green v. United States, 118 S. Ct. 1060
(1998).  Rational inferences from the evidence presented at trial
belie the appellants' claim that they were merely present inside
the barn and provide sufficient evidence of concert of action.
The three appellants emerged together from the barn, in which the
4000 pounds of marijuana was found scattered on the floor, in
boxes, in bundles, and inside a van.  There were three sets of
gloves found inside the barn, near packing materials such as
tape, boxes, and cat litter.  Several of the boxes were in
various stages of packaging.  Agents found marijuana residue on
Hurlburt's clothes and hands. "[P]articipation in a conspiracy
can be inferred from a development and collocation of

19

circumstances." United States v. Basey, 816 F.2d 980, 1002 (5th Cir. 1987) (internal quotation marks omitted). The collocation of circumstances in this case overwhelmingly supports the jury's conclusion that the appellants conspired to violate the narcotics laws.

C. The Identity of the Confidential Informant

Appellants next contend that the district court erred in refusing to order the disclosure of the identity of the confidential informant. In determining whether to order the disclosure of the identity of a government witness, a trial court must balance three factors: (1) the level of the informant's involvement in the alleged activity, (2) the helpfulness of disclosure to the asserted defense, and (3) the government's interest in nondisclosure. See United States v. Singh, 922 F.2d 1169, 1171-72 (5th Cir. 1991); United States v. De Los Santos, 810 F.2d 1326, 1332 (5th Cir. 1987). This court may reverse a conviction on the basis of the trial court's decision not to force the release of the identity of a government informant if the trial court abused its discretion in balancing these factors. See United States v. Vizcarra-Porras, 889 F.2d 1435, 1438 (5th Cir. 1989); De Los Santos, 810 F.2d at 1332. Any factual findings on which the court's legal conclusion rests are subject to the clearly erroneous standard. See Vizcarra-Porras, 889 F.2d at 1438.

20

The district court did not abuse its discretion in refusing to order the government to divulge the identity of the informant. The appellants fail to offer any evidence that the informant in this case was anything more than a mere tipster.  We have previously held that under the first factor, this amount of participation does not compel disclosure.  See United States v. Hickman, 151 F.3d 446, 459 (5th Cir. 1998); United States v. Cooper, 949 F.2d 737, 749 (5th Cir. 1991).  Likewise, under the second factor, the appellants do not explain why knowing the identity of the informant would aid their defense; their statement that evidence obtained from the tipster would exculpate them is merely conjecture.  See Cooper, 949 F.2d at 749; United States v. Gonzales, 606 F.2d 70, 75 (5th Cir. 1979) (stating that "it has been frequently held that mere conjecture or supposition about the possible relevancy of the informant's testimony is insufficient to warrant disclosure").  Because the appellants failed to establish the necessity for revealing the identity of the tipster, the trial court need not have balanced the government's interest in nondisclosure.  See United States v. Sanchez, 988 F.2d 1384, 1392 (5th Cir. 1993); Cooper, 949 F.2d at 749-50 (citing United States v. Kerris, 748 F.2d 610 (11th Cir. 1984)).  Our review of the record leads to the conclusion that the district court did not abuse its discretion in refusing to order the government to divulge the identity of its informant.

D.  The Foreign Deposition

21

The appellants next protest the district court's denial of their request to depose Rafael Medrano in Mexico. They argued to the trial court that Medrano would testify that he did not expect the appellants to be in the barn on the night of their arrests and that the appellants did not have prior knowledge of the marijuana's presence inside the barn until shortly before their arrests. The district court, applying Federal Rule of Criminal Procedure 15(a), denied the appellants' request.

Federal Rule of Criminal Procedure 15(a) provides in relevant part:

> Whenever due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial, the court may upon motion of such party and notice to the parties order that testimony of such witness be taken by deposition.

The district court found that there were no exceptional circumstances under Rule 15(a). We review the district court's denial of the appellants' motion to take Medrano's deposition in Mexico for an abuse of discretion. See United States v. Dillman, 15 F.3d 384, 389 (5th Cir. 1994); United States v. Omene, 143 F.3d 1167, 1170 (9th Cir. 1998). The district court has "broad discretion in granting rule 15(a) motions, and in determining the particular characteristics of the case to determine whether the 'exceptional circumstances' requirement has been met." United States v. Allie, 978 F.2d 1401, 1405 (5th Cir. 1992) (internal quotation marks omitted).

22

In Dillman, we expressly stated that although "the textual words of Rule 15 do not expressly require 'materiality,' it is emphatically clear to us that the words 'in the interest of justice' call for the deposition to offer evidence that is material." 15 F.3d at 389 (citing United States v. Drogoul, 1 F.3d 1546, 1552 (11th Cir. 1993); United States v. Ontiveros-Lucero, 621 F. Supp. 1037, 1038 (W.D. Tex. 1985), aff'd, 790 F.2d 891 (5th Cir. 1986)). The district court expressly found in this case that Medrano's deposed testimony would be immaterial because it was uncontested that the appellants were in the barn with the marijuana on the night of their arrests. In addition, the district court credited the appellants' testimony, taken during the suppression hearing, that the appellants had possession and control of the barn for the entire evening the night of their arrests. Therefore, testimony concerning Medrano's expectation as to the identity of his co-conspirators was not relevant, according to the district court, in determining whether the appellants possessed and were conspiring to distribute the marijuana found inside the barn.

The district court's decision not to permit the foreign deposition was not an abuse of its considerable discretion. When Rule 15(a) was adopted, "[i]t was contemplated that in criminal cases depositions would be used only in exceptional situations." Fed. R. Crim. P. 15 advisory committee's note 2; see United States v. Hernandez-Escarsega, 886 F.2d 1560, 1569-70 (9th Cir.

1989). The proposed testimony in this case would not have provided any evidence to undermine an element of either of the offenses. Medrano's testimony would have been collateral to the evidence that the appellants were in the barn with 4000 pounds of marijuana in various states of packaging with packaging materials found around them. The district court was within its discretion to credit the appellants' own testimony that they were in possession and control of the barn on the night of their arrests. At best, therefore, Medrano's testimony would have supported an inference that he did not know who his co-conspirators would be, an issue immaterial to the question of whether the appellants were guilty of possessing or conspiring to distribute marijuana. Thus, we decline to find that the district court abused its discretion in denying the appellants' motion for a foreign deposition under Rule 15(a). See United States v. Aggarwal, 17 F.3d 737, 742 (5th Cir. 1994) (affirming a district court's denial of a Rule 15(a) motion in part because the proposed deponent testimony was immaterial); cf. United States v. Farfan-Carreon, 935 F.2d 678, 679-80 (5th Cir. 1991) (finding that the district court abused its discretion in denying defendant's 15(a) motion where proposed deposition testimony would be directly relevant to an element of the charged offense).

E. The Newly Discovered Evidence

The appellants next argument concerns the Oklahoma City evidence, which the appellants claim identifies other individuals

24

as the true owners of the marijuana found inside the barn the night they were arrested. They assert that this suppression violated their due process rights under Brady v. Maryland, 373 U.S. 83 (1963), and that the district court erred in denying their new trial motion based on this newly discovered evidence. We discuss each issue in turn.

We review the district court's Brady determination de novo. See United States v. Dixon, 132 F.3d 192, 199 (5th Cir. 1997), cert. denied, 118 S. Ct. 1581 (1998); United States v. Green, 46 F.3d 461, 464 (5th Cir. 1995). To succeed on their Brady claims, the appellants must show (1) that the prosecution suppressed or withheld evidence (2) favorable to their defense and (3) material to guilt or punishment. See Brady, 373 U.S. at 87; United States v. Aubin, 87 F.3d 141, 148 (5th Cir. 1996), cert. denied, 117 S. Ct. 965 (1997). Undisclosed evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). A reasonable probability is one that "'undermines confidence in the outcome of the trial.'" Kyles v. Whitley, 514 U.S. 419, 434 (1995) (quoting Bagley, 473 U.S. at 678).

The appellants' principal contention is that the evidence, specifically the testimony of Michael Bakios, a government agent testifying in the Oklahoma City criminal trial, exculpates them by proving that the marijuana found in the barn was not owned by

them.  Instead, Bakios testified, the marijuana belonged to Javier Contreras and another individual, Rolando Samaniego, who was the purported chief distributor of the drugs.  The appellants claim that this evidence directly refutes the government's assertion at their trial that this case was "one of the few times you saw the source of supply meet the distribution network in a drug deal in a drug transaction," and that the "suppliers and the distributors were caught together."

The Oklahoma City evidence is not material.  At best, this evidence supports an inference that the appellants were part of a larger conspiracy, perhaps including Contreras and Samaniego. This inference is irrelevant--the government never alleged that the appellants were the only distributors and suppliers of the marijuana.  In fact, as the district court pointed out, the appellants' indictment stated that the conspiracy involved "others unknown to the Grand Jury."

Title to the marijuana is not an element of either offense with which the appellants were charged.  Regarding the possession charge, the government merely needed to prove that the appellants knowingly possessed the drugs with an intent to distribute them. As discussed above, possession under § 841(a)(1) can be established by showing that the defendant exercised dominion and control over the marijuana.  See Gardea Carrasco, 830 F.2d at 45. Whether the marijuana was part of a larger conspiracy is irrelevant to the fact that William Kessler was found with the

26

marijuana on the night of his arrest. On the conspiracy charge, the government's burden was simply to prove that the appellants knowingly and voluntarily became a part of an existing conspiracy. The possibility that the conspiracy was not limited to the appellants and included others, including Contreras and Samaniego, is inconsequential. It is well established that one may be convicted of conspiracy without knowing all the details or all the participants of the unlawful scheme. See United States v. Garcia Abrego, 141 F.3d 142, 155 (5th Cir.), cert. denied, 119 S. Ct. 182 (1998) (citing United States v. Westbrook, 119 F.3d 1176, 1189 (5th Cir. 1997)); United States v. Greenwood, 974 F.2d 1449, 1457 (5th Cir. 1992) (citing United States v. Fernandez-Roque, 703 F.2d 808, 814-15 (5th Cir. 1983)). Because the disclosure of additional conspirators does not undermine our confidence in the outcome of the trial, we find that this evidence is immaterial and the appellants' Brady claim must fail.

The appellants also maintain that the district court erred in denying their motion for a new trial based on the newly discovered Oklahoma City evidence. We review a denial of a new trial based on newly discovered evidence for an abuse of discretion. See United States v. Jaramillo, 42 F.3d 920, 924 (5th Cir. 1995); United States v. Miliet, 804 F.2d 853, 859 (5th Cir. 1986). We disfavor these motions and view them with great caution. See Jaramillo, 42 F.3d at 924; United States v. Pena, 949 F.2d 751, 758 (5th Cir. 1991). To receive a new trial on the

27

basis of newly discovered evidence, a defendant must prove that (1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the failure to detect the evidence was not due to a lack of diligence by the defendant; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence introduced at a new trial would probably produce an acquittal.  See Jaramillo, 42 F.3d at 924; United States v. Time, 21 F.3d 635, 642 (5th Cir. 1994).  Unless each element is satisfied, the motion for a new trial must be denied.  See United States v. Gresham, 118 F.3d 258, 267 (5th Cir. 1997), cert. denied, 118 S. Ct. 702 (1998); Jaramillo, 42 F.3d at 924.

We find no merit to the appellants' argument that the district court abused its discretion in denying the new trial motion.  As discussed in our analysis of the Brady issue, the evidence is not material; the possibility that the appellants were part of a larger conspiracy and that not all alleged conspirators were tried together in the same trial does not exculpate the appellants in any way.  In addition, the appellants must fail with regard to the fifth new trial element, as evidence is only material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  Bagley, 473 U.S. at 682.  Therefore, under the fifth element, we are confident that the evidence would not have produced an acquittal.  The appellants

have failed to prove their entitlement to a new trial under the fourth and fifth elements; we need not consider the others. Consequently, we find no indication that the district court abused its discretion in refusing to grant the appellants' motion for new trial.

### F. The Calculation of the Sentences

Lastly, the appellants argue that the district court erred in basing their sentences upon the 3987 pounds of marijuana found throughout the barn from which the appellants emerged. Specifically, the appellants assert that the district court erred because only a small percentage of the bundled substance found in the barn was tested, because it included the marijuana found inside the van parked in the barn, and because it did not make foreseeability findings related to the marijuana.

The trial court's determination of the amount of drugs attributable to a defendant at sentencing is a factual finding reviewable under the clearly erroneous standard. See United States v. Alix, 86 F.3d 429, 436 (5th Cir. 1996); United States v. Ponce, 917 F.2d 841, 842 (5th Cir. 1990). A clearly erroneous finding is one that is not plausible in the light of the record viewed in its entirety. See Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985); United States v. Murillo, 902 F.2d 1169, 1173 (5th Cir. 1990) (applying the Anderson standard in a sentencing guideline context). In determining drug quantities, the district court may consider any evidence which has

29

"sufficient indicia of reliability."  United States Sentencing Guidelines Manual § 6A1.3, commentary; see United States v. Manthei, 913 F.2d 1130, 1138 (5th Cir. 1990).  This evidence may include estimates of the quantity of drugs for sentencing purposes.  See United States v. Sherrod, 964 F.2d 1501, 1508 (5th Cir. 1992); United States v. Coleman, 947 F.2d 1424, 1428 (10th Cir. 1991).  The district court's factual finding of the amount of drugs involved must be supported by what it could fairly determine to be a preponderance of the evidence.  See United States v. Thomas, 932 F.2d 1085, 1091 (5th Cir. 1991).

The presentence report (PSR) recommended that William Kessler be held accountable for 1808.50 kilograms (3987 pounds) of marijuana, the quantity of marijuana seized from the barn and from inside the van parked in the barn.  The probation office recommended that Hurlburt and David Kessler be held accountable for this quantity as well as an additional 498.96 kilograms of marijuana seized from them in Mississippi in a different case.  Hurlburt and David Kessler objected that the marijuana from the Mississippi case should not be used to determine their sentences, and the district court granted their objection.  All appellants objected that they should not be held accountable for the marijuana inside the van and that they should not be held accountable for any substance not actually tested.  These objections were overruled.

A presentence report generally bears sufficient indicia of reliability to be considered as evidence in making factual determinations required by the sentencing guidelines.  See United States v. Alfaro, 919 F.2d 962, 966 (5th Cir. 1990); Murillo, 902 F.2d at 1173.  Here, there is nothing to suggest that the PSR is unreliable; the appellants offer no evidence, save for their unsworn objections, contradicting its conclusions.  The district court was therefore free to adopt the PSR.  See United States v. Gray, 105 F.3d 956, 969 (5th Cir.), cert. denied sub nom. Luchkowek v. United States, 117 S. Ct. 1326 (1997), and cert. denied, 117 S. Ct. 1856 (1997), and cert. denied sub nom. Satz v. United States, 117 S. Ct. 2530 (1997); United States v. Rodriquez, 897 F.2d 1324, 1327 (5th Cir. 1990).

The district court therefore did not clearly err in sentencing the appellants based on the full amount of marijuana found inside the barn on the night of their arrests.  Other than objecting to the PSR, the appellants provide no support for their assertions that not all of the substance found in the barn was marijuana and that they should not be held accountable for the marijuana found inside the van parked in the barn.  The court was permitted to rely on the PSR conclusions and the trial testimony that trained agents determined that all of the substance in the barn was marijuana, and that the marijuana found in the van was part of the repackaging operation being conducted in the barn.  These findings are plausible in light of the record, and we will

31

not disturb them.[2]  See Manthei, 913 F.2d at 1138 (upholding district court's drug quantity findings based on presentence report).

Finally, the appellants' contend that the district court erred in failing to make an express finding that the conspiratorial activity was foreseeable.  We find no merit to this claim.  U.S.S.G. § 1B1.3 requires that in a conspiracy, drug quantities reasonably foreseeable to the defendant and those quantities with which he is directly associated be used to determine the offense level.  We have rejected the proposition that a court must make a "catechismic regurgitation of each fact determined" when the findings in the PSR at issue are clear enough that the reviewing court is not left to second-guess the basis for the sentencing decision.  United States v. Carreon, 11 F.3d 1225, 1231 (5th Cir. 1994) (quoting United States v. Sherbak, 950 F.2d 1095, 1099 (5th Cir. 1992)); see United States v. Hooten, 942 F.2d 878, 881 (5th Cir. 1991).  Here, the PSR set forth specific facts demonstrating that all of the marijuana found in the barn was part of a common scheme or plan and that it was reasonably foreseeable to the appellants that the entire amount was part of the criminal activity.  No appellant has

---

[2] Appellants argue that a district court cannot properly rely on a presentence report in a sentencing hearing because it is hearsay not subject to an exception.  This is incorrect.  The Federal Rules of Evidence regarding hearsay are not applicable to sentencing proceedings.  See Fed. R. Evid. 1101(d)(3); Manthei, 913 F.2d at 1138.

presented any evidence remotely suggesting that all of the marijuana in the barn should not have been attributed to him because he did not reasonably foresee the actions of another conspirator. The district court simply sentenced each appellant based on the amount of drugs actually found in the barn, which was under the control of each appellant at the time of his arrest. Therefore, upon our review of the record we find that the district court committed no error in sentencing the appellants based on the entire amount of marijuana found inside the barn.

## III. CONCLUSION

For the foregoing reasons, the appellants' convictions and sentences are AFFIRMED.